Maynard Ranke, Claimant, *v.* State of New York, Defendant. (Claim No. 31714.)

Court of Claims, July 7, 1954.

*G. Sydney Shane* and *Ronald E. Coleman* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Lawrence H. Wagner* of counsel), for defendant.

LAMBIASE, J. This claim was filed against the State of New York to recover damages "for the wrongful acts of the State of New York, its officers, agents, representatives and employees in unlawfully arresting, detaining and maliciously prosecuting the claimant herein." Although the foregoing alleged causes of action are not stated separately but are commingled in the claim, there was no objection raised to that form of pleading, and the trial proceeded upon the theory of false arrest and imprisonment and of malicious prosecution.

The claim of the claimant herein was duly filed, has not been assigned, and has not been submitted to any other officer or tribunal for audit or determination.

On the 17th day of December, 1952, claimant, while driving a truck in the course of his employer's business, was stopped in the village of Cuba, Allegany County, New York, by a New York State trooper. It appears that he was stopped by the trooper because the latter thought that there was no license

plate on the rear of the truck. Although it appeared, upon further examination of the vehicle by the trooper, that there was no license plate on the rear thereof, the trooper accepted claimant's explanation for its not being on the truck and made no charge or arrest on that ground. However, at the same time the trooper asked claimant for his " time card " or records showing the information required by section 167 of the Labor Law of the State of New York, and it appearing that claimant did not have such a " time card " or records, the trooper thereupon arrested claimant for a violation of said section.

Claimant was thereupon taken by the trooper to a Police Justice in said village, and upon arriving there the trooper made out and filed an information against him charging him with such violation. At that time claimant was required to post, and did post, bail in the amount of $25 and was then and there released pending a hearing on the 22d day of December, 1952. This was claimant's only court appearance with reference to his arrest. On the adjourned date and on a later adjourned date, claimant appeared by attorney. The Police Justice denied claimant's attorney's motion to dismiss the charge against claimant. Subsequently upon order obtained by claimant's attorney, the matter was presented to the Grand Jury of Allegany County; and also upon his application a proceeding to inquire into the cause of claimant's detention was brought on before the County Court of Allegany County, New York. On January 13, 1953, the Grand Jury found no indictment against claimant; and on January 23, 1953, the County Judge before whom had been argued the proceedings hereinbefore mentioned, made an order releasing claimant from restraint and ordering his bail returned to him. Claimant's release was obtained by these legal steps, and there was no trial of the charge against him.

Section 167 of the Labor Law, at all times herein mentioned, provided in pertinent part as follows: " Every driver of a motor truck or motor bus shall keep and carry on the vehicle records showing the day and hour when and the place where he went on and was released from duty, whether in this state or outside of this state. The industrial commissioner shall prescribe the form of such records and may require such other information to be shown thereon as he shall deem advisable to insure the proper enforcement of this section. Such records shall be exhibited to the industrial commissioner, his representatives or to any state policeman or peace officer who shall demand to see the same and shall be held available for further

inspection for a period of sixty days within the state of New York in an office designated by the owner. Failure to produce such records upon demand shall be presumptive evidence of a violation of this section relating to keeping such records. * * * Any person violating the provisions of this section or failing to keep or falsifying any records to be kept in compliance therewith, or any corporation, company, association, joint-stock association, partnership, person or any officer or agent thereof, who shall require or permit any person to violate the provisions of this section or to falsify any record to be kept in compliance therewith shall be guilty of a misdemeanor and punishable by a fine not exceeding fifty dollars, or by imprisonment not exceeding six months, or both. It shall be the duty of the industrial commissioner, the state police and all peace officers, and they are hereby authorized, empowered and required to enforce the provisions of this section. The provisions of this section shall not apply to the operation of a motor truck or motor bus while being operated exclusively in a city and/or incorporated village nor to the operation of a motor truck or motor bus in and between cities and/or incorporated villages lying adjacent to the place where the driver thereof has gone on duty nor to the operation of a motor truck owned by a farmer and operated by himself or an employee when used in the hauling of farm, dairy or horticultural products and farm supplies for himself or his farm neighbors to market, creamery or place of storage, nor to the operation of wrecking and towing cars."

Also, at all times herein mentioned, there were certain rules which had been promulgated by the Industrial Commissioner of the State of New York entitled: " HOURS OF LABOR OF OPERATORS OF MOTOR TRUCKS AND/OR MOTOR BUSES — RULES *promulgated by the Industrial Commissioner pursuant to section 167 of the Labor Law:* " of which rules one numbered 12 reads as follows: " 12. The word ' adjacent ' as used in this law shall be deemed to mean within a radius of 40 miles from the limits of the city, village or town in which the driver ' goes on duty.' Therefore, the daily time record form is not required to be kept on days when a bus or truck is operated wholly within said 40 mile radius." (N. Y. Official Compilation of Codes, Rules & Regulations, Vol. 3, pp. 897, 898.)

The trooper arrested claimant for his failure to keep and carry the " time card " or records referred to in section 167 afore-mentioned; and it is claimant's contention that his failure to keep and carry the " time card " or records was not a viola-

tion of the section in view of the provisions therein contained that "The provisions of this section shall not apply  *  *  * to the operation of a motor truck or motor bus in and between cities and/or incorporated villages lying adjacent to the place where the driver thereof has gone on duty", and because of rule 12 aforesaid. He maintains that on the day that he was arrested he had gone on duty at Ellicottville, New York, and that he was hauling logs from Richburg, New York, to Ellicottville, New York; and he asserts that in doing so he was well within the forty-mile radius set up in the rule 12 above set forth, and, consequently, within one of the exceptions enumerated in said section, and that, therefore, he was not required to keep and carry such "time card" or records.

It is obvious that the Industrial Commissioner, by said rule 12, promulgated by him, defined or attempted to define, the word "adjacent" as used in section 167 of the Labor Law. In our opinion section 167 aforesaid does not give the Industrial Commissioner the authority or the power to make and to promulgate a rule of the content of rule 12, and nothing that has been called to our attention or that we have been able to find warrants the assumption of such authority or power on his part. Therefore, we conclude that rule 12 aforesaid was void on the day of the arrest and had been void from its making and promulgation.

We turn now to section 167 aforesaid for authority, if any, for the arrest; and we find that the important question which confronts us is as to the meaning of the word "adjacent" when used in said section. We could wish that the Legislature had been more explicit in its choice of language.

"Adjacent" is defined as "Lying near, close, or contiguous; neighboring; bordering on;" and it is said that "Objects are ADJACENT when they lie close to each other, but not necessarily in actual contact;  *  *  *". (Webster's New International Dictionary [1930 ed.].) The term is somewhat a relative and uncertain one, and it must be defined with reference to the context at least to some extent. Section 167 in pertinent part reads: "adjacent to the place where the driver thereof has gone on duty". What is adjacent, within the meaning of the section, must depend upon the circumstances of each particular case. There must of necessity be a point which is not adjacent; but where the "adjacent" ends and the "nonadjacent" begins may be difficult to determine. (*United States* v. *St. Anthony R. R. Co.,* 192 U. S. 524.)

It has been said of this statute and of the exceptions to its operation therein contained that: " The obvious purpose of this law was to safeguard travellers upon the highways. ' The legislature in making its classification was entitled to consider frequency and character of use and to adapt its regulations to the classes of operations, which by reason of their habitual and constant use of the highways brought about the conditions making regulation imperative    *    *    *.' (*Continental Baking Co.* v. *Woodring,* 286 U. S. 352, 373.) For aught we know, the dangers that result from fatigue induced by protracted driving may not prevail to a momentous degree in the localized or sporadic situations which the Legislature here chose to remove from the operation of the statute." (*People* v. *Creeden,* 281 N. Y. 413, 419–420.)

As we have hereinbefore noted claimant has sought to bring himself within one of the exceptions enumerated in the section, viz., that of adjacency. However, having in mind the purposes of the statute and the reasons for the exceptions to its operation therein stated and the meaning of the word " adjacent " when considered in the light of said exceptions, we are of the opinion that the section was intended to be and was applicable to claimant, and that he was violating it at the time of his arrest.

The arrest by the State trooper was without a warrant and was for a misdemeanor, and it could only be valid if the misdemeanor was committed or attempted in his presence. (Code Crim. Pro., § 177.) While it appears that claimant was released from restraint and his bail ordered returned to him by order of the County Court of the County of Allegany, it is reasonable to assume from Exhibit 5 and from the proof that his release was based upon a faulty or defective information. There was no acquittal. (Code Crim. Pro., § 340.) In fact, there has never been such an adjudication of the facts involved in the alleged violation of section 167 aforesaid as would estop anyone including the People of the State of New York from raising the question whether claimant was in fact guilty or innocent of the violation with which he was charged. We, therefore, in this civil action, are not estopped from making but we are required, in the orderly consideration of claimant's alleged causes of action, to make our own determination as to the facts forming the basis of the alleged violation.

We have concluded that the arrest of claimant was valid; that he was duly taken before the Police Justice and duly arraigned; that there was no unnecessary delay in connection therewith; that he was afforded the opportunity and availed

himself thereof to give bail (Code Crim. Pro., § 165); and that his alleged cause of action for false imprisonment has not been sustained. Said alleged cause of action is, therefore, dismissed upon the merits.

We turn now to claimant's alleged cause of action for malicious prosecution. To sustain such an action it is necessary that three elements shall concur in the transaction complained of: (1) The proceeding must have been instituted without probable cause. (2) There must have been malice in instituting it. (3) It must have been completely terminated. The want of probable cause is the essential basis of the action, and the burden is upon the claimant to prove, by circumstances or otherwise, that the State of New York had no probable grounds for commencing the prosecution. (*Kline* v. *Hibbard*, 80 Hun 50, affd. 155 N. Y. 679; *Schultz* v. *Greenwood Cemetery*, 190 N. Y. 276.)

In the light of our discussion herein we discuss claimant's alleged cause of action for malicious prosecution no further than to say that we are of the opinion that the record indicates not only that there has been a failure to establish malice and want of probable cause in the institution of the criminal proceedings against claimant, but also that there was indeed probable cause for the institution of said proceedings against him. Accordingly, claimant has failed to sustain his alleged cause of action for malicious prosecution. Said alleged cause of action, therefore, is dismissed upon the merits.

The claim of the claimant must be and hereby is dismissed upon the merits.

The foregoing constitutes our written and signed decision. (Civ. Prac. Act, § 440.)

Let judgment be entered accordingly.