■ HOWARD ZUCKER, an Infant, by His Father and Natural Guardian, DONALD ZUCKER, et al., Respondents, v COUNTY OF

ROCKLAND et al., Respondents, and WESTCHESTER ROCKLAND NEWSPAPERS, Appellant, et al., Defendants. — In an action, *inter alia,* to recover damages for defamation, defendant Westchester Rockland Newspapers (hereinafter WRN) appeals from an order of the Supreme Court, Rockland County (Weiner, J.), dated July 6, 1984, which denied its motion for summary judgment.

Order modified, on the law, by granting the motion for summary judgment to the extent of dismissing the fifth cause of action on behalf of plaintiff parents as against defendant WRN. As so modified, order affirmed, without costs or disbursements.

Defendant WRN is correct in its contention that the allegations of plaintiff parents contained in the fifth cause of action of the complaint state no cause of action against it. The article in question cannot be said to be defamatory as to the plaintiff parents, as they are neither mentioned by name nor otherwise identified, and no other theory of liability is even suggested. The affidavit of plaintiff Sandra Zucker in opposition to the instant motion was wholly inadequate to prevent summary judgment, as it merely reiterated her claims against another codefendant unconnected to WRN, and made vague and conclusory allegations of injury which were not supported by her and her husband's examinations before trial.

It appears, however, that questions of fact warranting trial do exist with respect to the remaining causes of action, namely those which assert that the infant plaintiff Howard Zucker was defamed by the false statements contained in the article which clearly identified him.

A private person may recover damages for defamation based upon an article the subject matter of which is "arguably within the sphere of legitimate public concern", but to do so he must establish that "the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties" (*Chapadeau v Utica Observer-Dispatch,* 38 NY2d 196, 199; *see also, Karaduman v Newsday, Inc.,* 51 NY2d 531, 549).

Here, WRN reporter David Colton was covering a trip by a group of juveniles to the Rahway State Prison as part of the so-called "Scared Straight" program. At his deposition Colton acknowledged that he had been told by at least one of the youth officers connected with the trip that the youths were not to be identified and it would be "appreciate[d]" if no photographs were taken. Colton passed this information along to his superiors, but was told to bring a photographer anyway. Photographs, including a photograph of the youths on the bus, were taken.

The photographs were shown by Colton to his superiors. When doing so, Colton stated to his superiors, with respect to the bus photograph, that it was "too bad" that it could not be used.

Lewis Morganstein, one of the youth officers connected with the trip, testified, *inter alia,* that he instructed Colton not to take photographs and not to mention names in his article. It also appears from Morganstein's deposition that, in addition to Colton, a representative of radio station WGRC was present and he, too, was told that the youths' names could not be used.

Moreover, plaintiff Howard Zucker, in an affidavit in opposition to the motion for summary judgment, stated that "[i]t was explicitly clear to Colton that my status was that of an observer, that I did not consider myself to have had any skirmishes or trouble with the law and there was no perceived basis for me to be a participant in this particular program".

Nevertheless, the photograph of the youths on the bus, in which plaintiff Howard Zucker claims that he is identifiable, was published along with the article stating that, according to a youth officer, all the youths who participated in the outing had been "involved with the law", a statement that the plaintiff Howard Zucker asserts was false to him.

The publication of the article and the photograph of the minors as persons in trouble with the law constituted "dissemination" of information under *Chapadeau (supra)* and whether or not it amounted to gross irresponsibility under the circumstances is a question of fact to be decided by the jury. Further, plaintiff Howard Zucker's contention that he told reporter Colton that he was along on the trip simply as an observer, raises another question of fact, and distinguishes the instant case from those which hold that gross irresponsibility cannot be found when the reporter relies upon information supplied by the police and when the reporter has no reason to doubt its accuracy (*see, e.g., Robart v Post-Standard,* 74 AD2d 963; *Simonsen v Malone Evening Tel.,* 98 AD2d 905). Under these circumstances, we conclude that an issue of fact exists as to whether defendant WRN acted with gross irresponsibility. Mollen, P. J., Thompson and Lawrence, JJ., concur.

Titone, J., concurs insofar as the fifth cause of action on behalf of the plaintiff parents is dismissed and dissents and votes to dismiss the remaining causes of action as to appellant, with the following memorandum:

I agree with the majority that the allegations of the plaintiff parents, as recited in the complaint, do not state a cause of action and, therefore, the complaint should be dismissed as to them. I would go further, however, and dismiss the entire

complaint as to appellant because on no view of the evidence can it be shown that Westchester Rockland Newspapers acted in a "grossly irresponsible manner" in publishing the news article in issue (*Chapadeau v Utica Observer-Dispatch,* 38 NY2d 196, 199; *see also, Gaeta v New York News,* 62 NY2d 340, 348-349; *Pollnow v Poughkeepsie Newspapers,* 107 AD2d 10).

The statements complained of — that the youths on the tour had "been involved with the law" or had "minor skirmishes" — are literally true. Howard Zucker (Howard) and his parents testified at a deposition that help had been sought for Howard because he had been using marihuana. Howard's school disciplinary records and the consent form all point to a youth involved with marihuana and other illegal activities. Moreover, Howard Zucker himself admitted that there was no factual basis for the statement in plaintiffs' bill of particulars that he was merely an "observer".

In any event, the newspaper reporter had no reason to doubt the veracity of the police officer's statements that "all youths" on the excursion were "involved with the law" and that it was "no field trip". As a matter of law, reasonable reliance upon the statements does not constitute gross irresponsibility (*see, Simonsen v Malone Evening Tel.,* 98 AD2d 905; *Carlucci v Poughkeepsie Newspapers,* 88 AD2d 608, *affd* 57 NY2d 883; *De Luca v New York News,* 109 Misc 2d 341).

Special Term and the majority incorrectly equate "irresponsible" with impropriety or a breach of journalistic ethics. The sole question of fact Special Term articulated concerned whether an agreement existed not to publish the photograph and to maintain anonymity. However unsporting or unworthy the failure to keep such a commitment may be — if, indeed, such an agreement was made — is immaterial. To prevail, a defamation plaintiff must raise a triable issue of fact on whether the publisher's newsgathering procedures were reasonably calculated to produce accurate reporting (*Gaeta v New York News,* 62 NY2d 340, *supra; Karaduman v Newsday, Inc.,* 51 NY2d 531, 549; *Pollnow v Poughkeepsie Newspapers,* 107 AD2d 10, *supra*). On this record, I can find no such issue of fact.